UNTIED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

-----------------------------------------------------x
THE UNITED STATES OF AMERICA
FOR THE USE AND BENEFIT OF
STERLING EQUIPMENT, INC.,

      Plaintiff,

-against-                      CIVIL ACTION NO.

GULF INSURANCE COMPANY,

      Defendant.
-----------------------------------------------------x

05 10089 NMG

## COMPLAINT

NOW COMES plaintiff, Sterling Equipment, Inc., and by and through its attorneys, complaining of the above-named defendant hereby alleges as follows:

### The Parties

1. Plaintiff, Sterling Equipment, Inc. (hereinafter referred to as "SEI"), is a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business located at 62 Nay Street, East Boston, Massachusetts 02128.

2. Defendant, Gulf Insurance Company (hereinafter referred to as "Gulf"), is, upon information and belief, a corporation duly organized and existing under the laws of the State of Connecticut with its principal place of business located One State Street Plaza, 9th Floor, New York, New York 10004.

### Jurisdiction and Venue

3. This action is one of which the United States District Court has jurisdiction under the provisions of 28 U.S.C. § 1331, because this action is commenced, and this Honorable

Court has jurisdiction, under the Miller Act, 40 U.S.C. § 270(a) *et seq.*, which requires that this suit be brought in the name of the United States for the use and benefit of plaintiff SEI. Venue is proper in the District of Massachusetts wherein the contract hereinafter described was performed.

Factual Allegations

4. Sometime in year 2003, M.A.T. Marine, Inc., upon information and belief, a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business located at 66 Sandwich Road, Bourne, Massachusetts, 02532 (hereinafter referred to as "M.A.T. Marine"), entered into a contract with the United States of America, Department of the Army, Corp of Engineers, Contract No. DACW33-03-C-0006, to repair section gates of the New Bedford/Fairhaven Hurricane Barrier (hereinafter referred to as "Project").

5. In accordance with federal law, M.A.T. Marine, as principal, and Gulf, as surety, issued a labor and material payment bond (Bond No. AE6298190) for the benefit of those persons providing labor, materials, equipment, and services in further prosecution of the Project.

6. Thereafter, M.A.T. Marine entered into a certain charter agreement, dated May 6, 2003 (hereinafter referred to as "Charter Party"), under the terms of which SEI agreed to bareboat charter the spud barge "JP" (hereinafter referred to as "Barge") to M.A.T. for the purpose of repairing the section gates of the New Bedford/Fairhaven Hurricane Barrier. A copy of the Charter Party is attached hereto and marked as **Exhibit A.**

7. Pursuant to the Charter Party, SEI delivered the Barge to M.A.T. Marine in New Bedford, Massachusetts on or about May 7, 2003.

8. Pursuant to Section 3 of the Charter Party, M.A.T. Marine agreed to pay charter hire to SEI in the sum of $8,500.00 per month for a period of four (4) months from May 7, 2003 to September 7, 2003.

9. Prior to expiration of the Charter Party, the parties thereto agreed, by oral modification to the agreement, to allow M.A.T. Marine to remain in possession of the Barge on a month-to-month basis upon the same terms and conditions as set forth in the written agreement.

10. Pursuant to the Charter Party, M.A.T. Marine re-delivered the Barge to SEI at East Boston, Massachusetts on or about January 23, 2004.

11. Pursuant to the Charter Party, M.A.T. Marine also agreed that should it become necessary for SEI to enforce its rights under the terms of the agreement, M.A.T. Marine agreed to pay reasonable attorneys' fees and costs to SEI.

12. Commencing on or about May 7, 2003, and each and every month thereafter, SEI rendered invoices to M.A.T. Marine for charter hire.

13. Although M.A.T. Marine made certain payments on account, there is now due, owing and unpaid the sum of $38,250.00, as nearly as same can be now estimated, together with interest and costs of collection, including reasonable attorneys' fees. Copies of the unpaid invoices are attached hereto and marked collectively as **Exhibit B.**

14. Despite repeated demands, M.A.T. Marine has refused to pay its arrearages as previously demanded by SEI.

15. SEI has duly performed all duties and obligations on its part to be performed under the Charter Party.

<u>Count One</u>
(Miller Act, 40 U.S.C. § 270(a) *et seq.*)

16. SEI repeats and realleges each and every allegation contained in Paragraphs 1 through 15 of this Complaint as if fully stated herein.

17. Gulf, as surety, having provided said labor and material payment bond, is obligated to pay SEI, as materialman and supplier of equipment to the Project, if M.A.T. Marine, as principal, fails to do so.

18. Despite demand, Gulf has refused and failed to pay SEI for the balance of the accrued charter hire.

19. By reason of the foregoing premises, and as a direct and proximate result thereof, SEI has been damaged as nearly as can now be estimated in the amount of $38,250.00, excluding interest and costs of collection, including reasonable attorneys' fees, no part of which has been paid, although duly demanded.

WHEREFORE, plaintiff, Sterling Equipment, Inc., demands that judgment enter in its favor against defendant, Gulf Insurance Company, in the amount of it liquidated damages, together with interests, costs, and reasonable attorneys' fees, and such other and further relief as this Honorable Court deems just and proper.

Dated: January 13, 2005

Respectfully submitted,
STERLING EQUIPMENT, INC.
By its attorneys,

NORMAN A. PELOQUIN, II, P.C.

By: _____
Norman A. Peloquin, II, Esquire
(BBO No. 550872)
Morad Building, 460 County Street
New Bedford, MA 02740-5107
Tel. 508-991-2300; Fax 508-991-8300

**EXHIBIT A**



**1-888-MR. BARGE**

| | | |
|---|---|---|
| J.P (M.A.T. MARINE) | Date: 06 May, 2003 | Customer PO No.: 06850 |
| 1. Owner: | 2. Charterer: | |
| Sterling Equipment Inc. | MAT MARINE, INC. | |
| 62 Nay Street | P.O. Box 974 | |
| East Boston, MA 02128 | Monument Beach, MA 02553 | |
| 3. State of Incorporation: | 4. State of Incorporation: | |
| Massachusetts | Massachusetts | |
| 5. Communications: | 6. Communications: | |
| Phone: 617-561-4469 | Phone: 508-759-6863 | |
| Facsimile: 617-561-0049 | Facsimile: 508-759-0309 | |
| E-Mail: | E-Mail: | |
| 7. Vessel/No:   JP        09-042 | 8. Job Site: | |
| Make/Mode/Type: ABS  SPUD  BARGE | NEW BEDFORD HARBOR / FAIRHAVEN | |
| Lenght/Breadth/Depth: 130'  52'  8' | HURRICANE BARRIER | |
| Agreed Value: $500,000.00 | Job No: 0302 | |
| 9. Vessel Use: | 10. Rental Rate: | Mobilization: |
| CRANE PLATFORM/ DRIVING PLATFORM | Daily/Weekly/Monthly:  /  / $8,500.00 | |
| 11. Minimum Charter Period:  4 MONTHS | 12. Charter Period:  05/07/2003  -  09/07/2003 | |
| 13. Delivery to Site: | 14. Return to Owner: | |
| NEW BEDFORD HARBOR, MA | EAST BOSTON, MA | |
| 15. Property Damage Insurance Coverage: | 16. Legal Liability Insurance Coverage: | |
| Insurer: | Insurer: | |
| Effect. Start Date:   End: | Effect. Start Date:   End: | |
| Policy Number: | Policy Number: | |

17. Additional Terms and Conditions:

General Terms and Conditions

1. Owner is the owner of and agrees to provide for the use of Charterer the Vessel identified in Box 7, hereinafter referred to as the "Vessel." Charterer agrees to hire said Vessel together with such tackle, apparel, appurtenances and any special equipment required for the Vessel's operations agreed upon between the parties.
2. It is acknowledged and agreed between the parties that this charter is a charter of the bare Vessel; and the Charterer shall furnish crew, pay their wages, victual them, pay for all port charges, customs fines, government fines, pilotages, overtime of crew, agencies, consular charges, furnishing all lines and paying all charges whatsoever of every nature, whether of the same kind as hereinabove enumerated or otherwise, that may be incurred in or about the use of Vessel during the term of the charter.
3. Charterer agrees that it shall pay for the use and hire of the said Vessel in the amount specified in Box 10. The first payment shall be due at the time of signing of this agreement. The next payment shall be due 30 days from the date of signing of this agreement, and each additional payment shall be due on the same day of each month thereafter. Charterer shall pay all charges incurred in the mobilization of the Vessel. If vessel is returned before the termination date specified in Box 12, hire will be deemed fully earned and not be prorated for the period specified in Box 11; however, hire will be prorated for each subsequent month based on a thirty-day month. Hire will be prorated only if Owner is informed in writing 30-days prior to redelivery.
4. The term of this charter shall commence and terminate on the dates specified in Box 12.
5. Charterer shall be responsible for the mobilization of the Vessel the location specified in Box 13 with mobilization costs to be the responsibility of the party specified in Box 2. Charterer shall be responsible for redelivery of the Vessel to the location specified in Box 14 or other mutually agreed location.
6. An on-hire survey is required prior to delivery of the Vessel to Charterer. At the time of redelivery of the Vessel, Owner and Charterer shall conduct a joint off-hire survey. All surveys are to be conducted by a qualified surveyor selected by Owner at Charterer's expense; reports to be submitted by Owner.
7. Owner shall exercise due diligence to ensure that the Vessel shall be in good state of repair in accordance with commercial marine practices, in efficient operating condition, tight, staunch, strong, and in all respects seaworthy at the beginning of the term of this Charter. Acceptance of the Vessel by Charterer at the Delivery Port specified in Box 13 will constitute full performance of the Owner's obligations to provide seaworthy vessel hereunder. Thereafter, Charterer shall exercise due diligence to ensure that the Vessel shall remain in a good state of repair in accordance with commercial maintenance practices, in efficient operating condition, tight, staunch, strong, and in all respects seaworthy at all times during the term of theis Charter, and specifically, when Charterer tenders said Vessel to any towing vessel. The Vessel shall be repaired by Charterer at its expense whenever necessary to maintain and preserve the Vessel in accordance with this paragraph.
8. Neither the Charterer nor any of its agents, servants, or employees, or the master of any vessel, has or shall have any right, power or authority to create, incur, or permit to be placed or imposed upon the Vessel any liens whatsoever. Charterer shall at all times carry and display a true copy of this Charter Agreement, and any amendments or assignment thereof, aboard the Vessel and shall display the same to any person having business with the Vessel. Charterer shall at its own expense protect and hold Owner harmless from and against all liens, demands, and claims of any nature, founded or unfounded, by any third party in connection with the use, operation or maintenance of the Vessel during the term of this Charter. Charterer shall indemnify Owner for all expenses and costs incurred in connection with any such lien, demand or claim, including the reimbursement of attorney's fees. Agents, servants, or employees may or may not include the use of an independent contractor or other third-party towing company.
9. During the term of this charter, Charterer shall not operate the Vessel beyond the navigation limits stated in the insurance policy which is hereinafter provided for.
10. During the term of this Charter, the Charterer, its agents, servants, or employees shall tow, navigate, anchor, or moor the Vessel so that it shall never be allowed to ground.

62 Condor Street, East Boston, MA 02128  •  Tel: (617) 561-4469  •  Fax: (617) 561-0049

11. During the term of this Charter, the Charterer hereby agrees, to maintain the Vessel at its own expense from time to time and whenever necessary throughout the term of this Charter to preserve the Vessel in a good state of repair, in efficient operating condition, light, staunch, strong, and in all respects seaworthy, all in accordance with commercial marine practices and to make all repairs necessary to keep the Vessel in the same condition as at delivery and assumes all risk of damage or loss, ordinary wear and tear or depreciation excepted, and agrees to redeliver the Vessel and articles of inventory attached thereto free from all bills, liens, or encumbrances of any nature whatsoever. The Vessel is to be redelivered in substantially the same condition as when accepted by Charterer, reasonable wear and tear excepted. The Charterer shall make no structural changes in or to the Vessel and shall make no changes in the appurtenances or spare parts thereof without in each instance first securing written approval of the Owner.

12. Charterer shall produce and maintain at its sole expense during the term of this Charter Agreement, or any extension thereof, insurance on terms equivalent to the broadest coverage available from American underwriters in such forms, amounts, and markets as Owner shall reasonably request, provided, however, that in no event shall Charterer insure the Vessel and its liability for less than the following: (a) hull and machinery insurance in the amount of the Agreed Value specified in Box 7 with a maximum deductible not to exceed $5,000.00 per incident or single occurrence of hull damage; (b) protection and indemnity insurance, including maritime employer's liability coverage where applicable and war risk if requested by Owner, in the minimum amount of $5,000,000.00 per incident or single occurrence with a maximum deductible not to exceed $5,000.00 for bodily injury/death and property damage; (c) tower's liability insurance where applicable; (d) state and/or federal workers' compensation insurance as required by applicable law; (e) pollution and cleanup insurance, including liability for CERCLA and civil penalty in the minimum amount of $5,000,000.00 per incident or single occurrence; and (f) where applicable, all risk cargo insurance for any cargo carried aboard the Vessel in an amount equal to the full and actual market value of the goods.
All insurance policies shall name Owner, it's successors and/or assigns, as additional named assureds and first loss payees, as their respective interests may appear from time to time. Such insurance shall provide the Owner with a minimum of thirty (30) days written notice of actual or proposed cancellation or termination or reduction in coverage or any other material change in the provisions thereof and shall provide that there shall be no recourse against Owner for the payment of premiums or commissions therefor.
At the commencement of this Charter, and prior to delivery for the Vessel, Charterer shall deliver to Owner an original or certified true copy of all policies evidencing insurance maintained under this Agreement; provided, however, that original policies shall be made available promptly for inspection by the Owner upon written request. Owner may, at its election, accept a certificate or broker's opinion or declaration evidencing coverage in lieu of an original policy of insurance.
In the event that coverage provided hereunder is not maintained in full force and effect, or by any act, omission, or neglect of Charterer, said insurance is suspended, impaired, rescinded or invalidated, then Charterer shall hold Owner harmless and indemnify against all losses, claims, and/or demands, including court costs and reasonable attorney's fees, which would have otherwise been covered by said insurance.

13. Charterer agrees, that should the Vessel sustain breakdown of machinery (caused by reasons other than ordinary wear and tear) or be disabled or damaged by fire, grounding, collision, or other cause after delivery, to continue payments of charter hire as aforesaid until such time as the Vessel is restored to the same condition as at the commencement of the Charter and redelivered to Owner at the Delivery Port specified in Box 13.

14. The parties agree that notices of and from one to the other shall be sent to address specified in Boxes 5 and 6.

15. Should it become necessary for either party to enforce its rights under the terms of this Agreement, the losing party agrees to pay reasonable attorney's fees and costs to the prevailing party.

16. Owner shall have the right to send its representative aboard the Vessel at any reasonable time or place for the purpose of inspecting the Vessel and determining its condition, provided that inspection does not interfere with Charterer's use of the Vessel.

17. Charterer hereby agrees that it will indemnify and save harmless the Owner of and from any claims, demands, and causes of action (other than those arising from the acts, errors or omissions of the Owner, its agents, servants, and employees) which may be against it by any and all persons arising out of the Charter of said Vessel.

18. Owner warrants that it is and will be the lawful Owner of the Vessel and the equipment thereon during the term of this Charter and that it will warrant and defend the title to the same against the lawful claims and demands of all persons.

19. Owner agrees not to sell of transfer the Vessel without written notice in advance to Charterer and will ensure that any purchaser agrees to honor this Charter agreement as a condition of any sale.

20. In the event of Charterer's default of this charter party by: (a) Failure of the Charterer to pay charter hire within ten (10) days of the date that the same shall be due, time being of the essence in this respect; or (b) Receipt by Charterer or Owner of notice that any policy of insurance provided for in paragraph 11 is to be rescinded or canceled; or (c) The taking or detention of the Vessel by any Federal or state judicial or governmental authority which shall not have been released within ten (10) days of such taking, then Owner may enter and retake the Vessel without legal process wherever the Vessel may be found, and Charterer shall, upon demand of Owner, surrender possession of the Vessel to Owner. Upon any such retaking (or regaining possession by virtue of judicial process, as the case may be); Charterer shall be deemed divested of all right, title and interest of, in, and to the Vessel, and such retaking and repossession shall be perpetual bar at law, in admiralty, or in equity against the Charterer, its successors and assigns, and against any and all persons who may claim the Vessel, or any part thereof; or (d) Failure to maintain and preserve the Vessel in accordance with the terms hereof; or (e) Failure to perform or comply with any other provision of this Charter for more than ten (10) days, the Owner may enter and retake the Vessel without legal process.
Withdrawal of the Vessel from service and the termination of this Charter shall be without prejudice to any claim by Owner for damage suffered or to be suffered by reason of the Charterer's default which Owner might otherwise have had against Charterer in the absence of such withdrawal. This paragraph shall be cumulative to other existing remedies and nothing contained herein shall be construed to prevent Owner's rights hereunder, except as otherwise expressly provided herein.

21. This instrument contains the entire and only agreement between the parties and no oral statement or representations or prior written matter not contained in this instrument shall have any force and effect. The parties agree that all disputes hereunder shall be decided under the Commercial Arbitration Rules by The American Arbitration Association in the Commonwealth of Massachusetts or other mutually agreed non-judicial dispute resolution procedure, in accordance with the general maritime law of the Untied States as applicable and otherwise according to the laws of the Commonwealth of Massachusetts. The commencement of any action, to retake possession of the Vessel, whether at law, in admiralty or in equity, or to otherwise enforce a claim against a contractor's payment bond shall not be construed as a waiver of this paragraph.

22. No waiver by Owner or Charterer of any one covenant or condition contained in this Charter shall be construed as a waiver of any other covenant or condition, nor shall a waiver of any one breach be construed as a waiver of any subsequent breach hereof.

WITNESS:

The parties hereto set their hands on the day and year first written above and by which charterer acknowledges the receipt of a signed copy of this center.

OWNER:    Sterling Equipment Inc.            CHARTERER:    MAT MARINE, INC.
BY:       _____            BY:           _____
TITLE:    _____            TITLE:        _____
WITNESS:  _____            WITNESS:      Barbara O'___

**EXHIBIT B**

1:56 PM
08/25/04
Accrual Basis

# Sterling Equipment, Inc.
## Customer Open Balance
### All Transactions

| Type | Date | Num | Due Date | Open Balance |
|---|---|---|---|---|
| **MAT Marine, Inc.** | | | | |
| **0302-000** | | | | |
| Invoice | 9/7/2003 | 3284 | 9/7/2003 | 8,500.00 |
| Invoice | 10/7/2003 | 3430 | 10/7/2003 | 8,500.00 |
| Invoice | 11/7/2003 | 3641 | 11/7/2003 | 8,500.00 |
| Invoice | 12/7/2003 | 3893 | 12/7/2003 | 8,500.00 |
| Invoice | 1/7/2004 | 4038 | 1/7/2004 | 4,250.00 |
| Total 0302-000 | | | | 38,250.00 |
| Total MAT Marine, Inc. | | | | 38,250.00 |
| **TOTAL** | | | | 38,250.00 |

# Sterling Equipment, Inc.

62 Nay Street
East Boston, MA 02128

# Invoice

| Date | Invoice # |
|---|---|
| 9/7/2003 | 3284 |

Sold To:

MAT Marine, Inc.
P.O. Box 974
Monument Beach, MA

| Work Done At |
|---|
| New Bedford Harbor, Fairhaven |

| Customer PO # | Terms | Due Date | Job Number |
|---|---|---|---|
| 6850 | | 9/7/2003 | 0302-000 |

| Quantity | Item Code | Description | Price Each | Amount |
|---|---|---|---|---|
| 1 | 09-042 | Barge, JP (130x52x8) | 8,500.00 | 8,500.00 |
| | | Rental Period 09/07/03-10/07/03 | | |

**Sales Tax (5.0%)**   $0.00

**Balance Due**   $8,500.00

# Sterling Equipment, Inc.

62 Nay Street
East Boston, MA 02128

# Invoice

| Date | Invoice # |
|---|---|
| 10/7/2003 | 3430 |

Sold To:

MAT Marine, Inc.
P.O. Box 974
Monument Beach, MA

| Work Done At |
|---|
| New Bedford Harbor, Fairhaven |

| Customer PO # | Terms | Due Date | Job Number |
|---|---|---|---|
| 6850 | | 10/7/2003 | 0302-000 |

| Quantity | Item Code | Description | Price Each | Amount |
|---|---|---|---|---|
| 1 | 09-042 | Barge, JP (130x52x8) | 8,500.00 | 8,500.00 |
| | | Rental Period 10/7-11/7/03 | | |

| | |
|---|---|
| Sales Tax (5.0%) | $0.00 |
| **Balance Due** | **$8,500.00** |

# Sterling Equipment, Inc.

62 Nay Street
East Boston, MA 02128

# Invoice

| Date | Invoice # |
|---|---|
| 11/7/2003 | 3641 |

Sold To:

MAT Marine, Inc.
P.O. Box 974
Monument Beach, MA

Work Done At

New Bedford Harbor, Fairhaven

| Customer PO # | Terms | Due Date | Job Number |
|---|---|---|---|
| 06850 | | 11/7/2003 | 0302-000 |

| Quantity | Item Code | Description | Price Each | Amount |
|---|---|---|---|---|
| 1 | 09-042 | Barge, JP (130x52x8) | 8,500.00 | 8,500.00 |
| | | Rental Period 11/7/03-12/7/03 | | |

| | |
|---|---|
| Sales Tax (5.0%) | $0.00 |
| **Balance Due** | **$8,500.00** |

# Sterling Equipment, Inc.
62 Nay Street
East Boston, MA 02128

# Invoice

| Date | Invoice # |
|---|---|
| 12/7/2003 | 3893 |

Sold To:

**MAT Marine, Inc.**
**P.O. Box 974**
**Monument Beach, MA**

| Work Done At |
|---|
| New Bedford Harbor, Fairhaven |

| Customer PO # | Terms | Due Date | Job Number |
|---|---|---|---|
| 06850 | | 12/7/2003 | 0302-000 |

| Quantity | Item Code | Description | Price Each | Amount |
|---|---|---|---|---|
| 1 | 09-042 | Barge, JP (130x52x8) | 8,500.00 | 8,500.00 |
| | | Rental Period 12/07/03-01/07/03 | | |

| | |
|---|---|
| Sales Tax (5.0%) | $0.00 |
| **Balance Due** | **$8,500.00** |

# Sterling Equipment, Inc.

62 Nay Street
East Boston, MA 02128

# Invoice

| Date | Invoice # |
|---|---|
| 1/7/2004 | 4038 |

Sold To:

MAT Marine, Inc.
P.O. Box 974
Monument Beach, MA

Work Done At

New Bedford Harbor, Fairhaven

| Customer PO # | Terms | Due Date | Job Number |
|---|---|---|---|
| 6850 | | 1/7/2004 | 0302-000 |

| Quantity | Item Code | Description | Price Each | Amount |
|---|---|---|---|---|
| 1 | 09-042 | Barge, JP (130x52x8) | 8,500.00 | 8,500.00 |
| | | Rental Period 01/07/04-02/07/04 | | |

Sales Tax (5.0%)    $0.00

**Balance Due**    $4,250.00

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
STERLING EQUIPMENT, INC.

## DEFENDANTS
GULF INSURANCE COMPANY

(b) County of Residence of First Listed Plaintiff: **SUFFOLK**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed: **FOREIGN**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
NORMAN A. PELOQUIN, II P.C. (BBO 550872)
460 COUNTY STREET
NEW BEDFORD, MA 02740
TEL. 508-991-2300; FAX 508-991-8300

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 362 Personal Injury— Med. Malpractice | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [x] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 365 Personal Injury — Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 423 Withdrawal 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 630 Liquor Laws | | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 640 R.R. & Truck | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' Liability | [ ] 650 Airline Regs. | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 340 Marine / **PERSONAL PROPERTY** | [ ] 660 Occupational Safety/Health | [ ] 830 Patent | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 345 Marine Product Liability / [ ] 370 Other Fraud | [ ] 690 Other | [ ] 840 Trademark | [ ] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle / [ ] 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability / [ ] 380 Other Personal Property Damage | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury / [ ] 385 Property Damage Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 892 Economic Stabilization Act |
| | | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 893 Environmental Matters |
| | | | [ ] 864 SSID Title XVI | [ ] 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 220 Foreclosure | [ ] 442 Employment | Habeas Corpus: | **FEDERAL TAX SUITS** | |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 740 Railway Labor Act | |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff or Defendant) |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | | [ ] 550 Civil Rights | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 890 Other Statutory Actions |
| | | [ ] 555 Prison Condition | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
MATERIALSMAN'S CLAIM UNDER MILLER ACT, 40 USC 270(a).

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A **CLASS ACTION DEMAND** UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE: NMG
DOCKET NUMBER: 04-12313

DATE: 01/13/2005
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) __Sterling Equipment, Inc.___
   __v. Gulf Ins. Co.___

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   ___ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ___ II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,       *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

   ✓ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
          315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
          380, 385, 450, 891.

   ___ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

   ___ V.   150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.
   __Sterling Equipment, Inc. v. M.A.T. Marine, Inc.   04-12313 NMG__

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
                                                                           YES       (NO)

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)
                                                                           YES       (NO)
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                                           YES       NO

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?
                                                                           YES       (NO)

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
                                                                           YES       NO

   A.   IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?
        (EASTERN DIVISION)        CENTRAL DIVISION        WESTERN DIVISION

   B.   IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?
        EASTERN DIVISION          CENTRAL DIVISION        WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Norman A. Peloquin__
ADDRESS __460 County Street, New Bedford, MA 02740__
TELEPHONE NO. __508-991-2300__

(Cover sheet local.wpd - 11/27/00)